JUDGE KAPLAN         08 CIV 11096

GREGG L. WEINER
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000
gregg.weiner@friedfrank.com

Attorneys for Plaintiffs
  SL Green Operating Partnership, L.P.
  and SL Green Realty Corp.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

SL GREEN OPERATING PARTNERSHIP, L.P. and SL  :  08 Civ _____
GREEN REALTY CORP.,                          :
                                             :
                     Plaintiffs,             :  ECF CASE
                                             :
          - against -                        :
                                             :
                                             :
                                             :
                                             :  COMPLAINT
LEHMAN BROTHERS COMMERCIAL BANK,             :
                                             :
                     Defendant.              :
                                             :
-----------------------------------------------------------x

      Plaintiffs SL Green Operating Partnership, L.P. ("Borrower"), as Borrower, and SL Green Realty Corp., as Guarantor ("SL Green Realty" and together with "Borrower", "SL Green"), by their attorneys, allege upon knowledge as to themselves and their own acts and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant Lehman Brothers Commercial Bank's ("Lehman Bank") breach of its obligations under an Amended and Restated Credit Agreement, dated June 28, 2007 (the "Credit Agreement"), by and between SL Green, Lehman Bank and other financial institutions party thereto as "Lenders," and Wachovia Bank, National Association, as "Agent." As of September 19, 2008, Lehman Bank became a "Defaulting Lender" under the Credit Agreement as a result of its failure to make available to Agent its portion (approximately $26 million) of Revolving Loans (as defined in the Credit Agreement) requested by Borrower under the Credit Agreement on September 16 and 17, 2008. Plaintiffs have been damaged by Lehman Bank's default, incurring substantial costs and expenses as a result of Lehman Bank's breach.

2. In addition, in this action Plaintiffs seek a declaration that: (1) Lehman Bank is not entitled to receive interest and fees on any of its outstanding loans to Borrower under the Credit Agreement (or any other Loan Documents) from and after the date of its default; (2) post-default interest and fees paid by Borrower on any such outstanding loans, which has been paid to and is being held in escrow by the Agent under the Credit Agreement, belongs to Borrower rather than Lehman Bank; and (3) SL Green may terminate Lehman Bank under the Credit Agreement pursuant to section 3.11(b) of the Credit Agreement without further cost, payment, or obligation.

## PARTIES

3. SL Green Operating Partnership, L.P. is a Delaware limited partnership. Its partners are citizens of Delaware, New York and other states (not including Utah).

4. SL Green Realty is a Maryland corporation with its principal place of business at 420 Lexington Avenue, New York, New York. SL Green Realty is a Guarantor under the Credit Agreement.

5. Defendant Lehman Bank is a Utah chartered industrial loan company with its principal place of business at 4001 South 700 East, Suite 410, Salt Lake City, Utah. Upon information and belief, Lehman Bank may presently operate under the name "Woodlands Commercial Bank."

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 in that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs and the Defendant.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and the parties agreed pursuant to Section 12.4 of the Credit Agreement that the Federal District Court of the Southern District of New York shall have jurisdiction to hear and determine any claims or disputes arising under the Credit Agreement.

## BACKGROUND FACTS

8. After entering into the Credit Agreement, and prior to September 2008, Borrower borrowed $21.615 million of Revolving Loans under the Credit Agreement from the Lenders. Lehman Bank's portion of those loans was, and remains today, $21.615 million.

9. On September 16 and 17, 2008, Borrower submitted a Notice of Borrowing to the Agent under the Credit Agreement for, respectively, $250 million and $450 million of additional Revolving Loans. On September 22, 2008, $674.3 million of the requested loans were funded by the Lenders other than Lehman Bank as required under the Credit Agreement. However, Lehman Bank failed to make available to Borrower its portion of the requested loans, totaling $25.7 million. As a result, Lehman Bank became a Defaulting Lender under the Credit Agreement.

10. Section 2.4(j) of the Credit Agreement provides in relevant part as follows:

> Each lender severally agrees to pay to the Agent on demand in immediately available funds in Dollars the amount of such Lender's Commitment Percentage of each drawing paid by the Agent under each Letter of Credit to the extent such amount is not reimbursed by the Borrower pursuant to Section 2.4.(d)...
>
> Each Lender's Obligation to make such payments to the Agent under this subsection, and the Agent's right to receive the same, shall be absolute, irrevocable and unconditional and shall not be affected in any way by any circumstance whatsoever...

11. Section 3.11(a) of the Credit Agreement provides in relevant part as follows:

> If a Lender is a Defaulting Lender because it has failed to make timely payment to the Agent of any amount required to be paid to the Agent hereunder (without giving effect to any notice or cure periods), in addition to other rights and remedies which the Agent or the Borrower may have under the immediately preceding provisions or otherwise ... [a]ny amounts received by the Agent in respect of the Defaulting Lender's Loans shall not be paid to such Defaulting Lender ... and shall be held uninvested by the Agent and either applied against the purchase price of such Loans under the following subsection (b) or paid to such Defaulting Lender upon such Defaulting Lender curing its Default.

12. Section 3.11(b) of the Credit Agreement provides in relevant part as follows:

4

Any Lender who is not a Defaulting Lender may, but shall not be obligated to, in its sole discretion, acquire all or a portion of a Defaulting Lender's Commitment. Any Lender desiring to exercise such right shall give written notice thereof to the Agent and Borrower no sooner than 2 Business Days and not later than 5 Business Days after such Defaulting Lender became a Defaulting Lender. If more than one Lender exercises such right, each such Lender shall have the right to acquire an amount of such Defaulting Lender's Commitment in proportion to the Commitments of the other Lenders exercising such right. If after such 5th Business Day, the Lenders have not elected to purchase all of the Commitment of such Defaulting Lender, then the Borrower may, by giving written notice thereof to the Agent, such Defaulting Lender and the other Lenders, either (i) demand that such Defaulting Lender assign its Commitment to an Eligible Assignee subject to and in accordance with the provisions of Section 12.5.(b) for the purchase price provided below or (ii) **terminate the Commitment of such Defaulting Lender, whereupon such Defaulting Lender shall no longer be a party hereto or have any rights or obligations hereunder or under any of the other Loan Documents (except that such Defaulting Lender shall remain liable to the Borrower for damages by reason of its failure or refusal to perform hereunder)**.... (emphasis added).

13.   Section 3.11(b) of the Credit Agreement further provides as follows:

Prior to the payment of the purchase price to a Defaulting Lender, the Agent shall apply against such purchase price any amounts retained by Agent pursuant to the last sentence of the immediately preceding subsection (a). The Defaulting Lender shall be entitled to receive amounts owed to it by the Borrower under the Loan Documents **which accrued prior to the date of the default** by the Defaulting Lender, to the extent the same are received by the Agent from or on behalf of the Borrower. (emphasis added).

14.   On September 24, 2008, Agent (a) notified Lehman Bank that, as of September 19, 2008, it had become a Defaulting Lender under the Credit Agreement, and (b) advised the Lenders that Lehman Bank had become a Defaulting Lender and that they each had the right to acquire all or a portion of Lehman Bank's Commitment under the Credit Agreement. To date, no Lender has exercised that right.

15.   Pursuant to Section 3.11(a) of the Credit Agreement, any amounts received by the Agent in respect of a Defaulting Lender's Loans are not to be paid to

5

such Defaulting Lender but are to be held uninvested by the Agent and either applied against the purchase price of such Loans in accordance with a transfer pursuant to Section 3.11(b), or paid to the Defaulting Lender upon cure by the Defaulting Lender of its default.

16. By letter dated September 25, 2008, Borrower directed Agent not to pay over to Lehman Bank any portion of any interest being paid by Borrower to Agent with respect to Lehman Bank's loans for so long as Lehman Bank is a Defaulting Lender, but rather, in accordance with section 3.11(a), to hold any such amounts uninvested. Borrower has continued to pay to Agent post-default interest and fees on the full outstanding loan balance, including Lehman Bank's portion of the loans.

17. Under section 3.11(b) of the Credit Agreement, once the Borrower exercises its right to terminate a Defaulting Lender, the Defaulting Lender loses all of its rights under the Credit Agreement and other Loan Documents (including its right to receive interest accruing on its outstanding loans after the date of its default), and it may no longer assign its Commitment or cure its default. Moreover, the Commitment of a Defaulting Lender may be terminated by Borrower without further cost, payment or obligation.

18. Upon information and belief, Lehman Bank disputes that (a) as of September 19, 2008, it is not entitled to receive interest and fees on its outstanding loans under the Credit Agreement (or any other Loan Documents), and (b) pursuant to section 3.11(b) of the Credit Agreement, SL Green may terminate Lehman Bank's Commitment under the Credit Agreement without further cost, payment, or obligation. Moreover, Agent has advised Borrower that it will not turn over to Borrower the post-default interest

and fees paid to Agent in respect of Lehman Bank's outstanding loans absent the consent of Lehman Bank or a court order. Accordingly, it is necessary for this Court to declare the rights and obligations of SL Green and Lehman Bank under the Credit Agreement concerning their post-default and post-termination rights and obligations.

## COUNT I

(Breach of Contract)

19. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 18 as if fully set forth herein.

20. Lehman Bank was obligated under the Credit Agreement to make available Revolving Loans to Borrower in September 2008 of $25.7 million.

21. Lehman Bank materially breached the Credit Agreement by failing and refusing to make available its portion of the Revolving Loans as requested in the notices submitted to Agent by Borrower on September 16 and 17, 2008.

22. As a direct and proximate result of Lehman Bank's breach, SL Green has suffered, and will suffer further, substantial harm, including without limitation fees, points, and increased borrowing costs, expenses and other costs (including legal fees) arising from identifying a replacement lender, and other damages resulting from SL Green not having the funds that Lehman Bank was required to make available under the Credit Agreement.

23. By reason of the foregoing, SL Green is entitled to judgment against Lehman Bank in an amount to be determined at trial, but that in any event is well in excess of $75,000.

## COUNT II

(Declaratory Judgment)

24. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 23 as if fully set forth herein.

25. By virtue of Lehman Bank's above described failure to act as required under the Credit Agreement, it has become, and remains, a Defaulting Lender.

26. There is a ripe, justiciable dispute between SL Green and Lehman Bank concerning the rights of Borrower and a Defaulting Lender under the Credit Agreement, in that SL Green contends that: (a) Lehman Bank is not entitled to receive interest and fees on any of its outstanding loans to Borrower under the Credit Agreement (or any other Loan Documents) from and after the date of its default; (b) post-default interest and fees paid by Borrower on any such outstanding loans, which has been paid to and is being held in escrow by the Agent under the Credit Agreement, belongs to Borrower rather than Lehman Bank; and (c) SL Green may terminate Lehman Bank under the Credit Agreement pursuant to section 3.11(b) of the Credit Agreement without further cost, payment, or obligation.

27. Upon information and belief, Lehman Bank disputes one or more of Plaintiffs' allegations for declaratory relief set forth in paragraph 26 above.

28. Accordingly, SL Green is entitled to a declaration of the parties' rights and obligations under the Credit Agreement as set forth in paragraph 26 above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

(a) On Count I, awarding Plaintiffs damages in an amount to be determined at trial, plus interest;

(b) On Count II, declaring the rights and obligations of SL Green and Lehman Bank under the Credit Agreement concerning their post-default and post-termination rights and obligations, as set forth in paragraph 26 above;

(c) Awarding Plaintiffs their costs, disbursements, and expenses (including attorneys' fees) incurred in connection with this action; and

(d) Awarding such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 22, 2008

                                        FRIED, FRANK, HARRIS, SHRIVER
                                        & JACOBSON LLP

                                        By: ____/s/ Gregg S. W.____
                                            Gregg L. Weiner
                                            (A Member of the Firm)
                                        gregg.weiner@friedfrank.com
                                        One New York Plaza
                                        New York, New York 10004-1980
                                        (212) 859-8000

                                        Attorneys for Plaintiffs
                                            SL Green Operating Partnership, L.P. and
                                            SL Green Realty Corp.